Connie HALL and Marymay
Bernard, Plaintiffs,

v.

CITY OF AUBURN, et al., Defendants.

Civ. No. 79–279 P.

United States District Court,
D. Maine.

July 11, 1983.

Harold Lichten, Pine Tree Legal Assistance, Robert S. Hark, Lewiston, Me., Robert E. Mittel, Portland, Me., for plaintiffs.

G. Curtis Webber, Auburn, Me., for defendants.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

Plaintiffs Connie Hall and Marymay Bernard each seek an award of attorneys' fees and costs pursuant to Section 706(k) of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–5(k), for legal services performed in prosecuting an employment discrimination claim in *state* judicial proceedings. Their motions for attorneys' fees and costs are supported by affidavits and detailed time sheets. Defendants object both to plaintiffs' entitlement to any awards and to the amounts requested. A hearing has been held and counsel have submitted written and oral arguments. To the extent hereinafter set forth, plaintiffs' requests for attorneys' fees and costs are granted.

### I.

*Background of the Action*

In September 1978 plaintiffs Hall and Bernard were two of three females who

applied for positions on the Auburn, Maine police force. Despite high scores on the written portion of the examination process, both were rejected following oral interviews. In November 1978, plaintiffs filed charges with the Equal Employment Opportunity Commission (EEOC) alleging that defendants, the City of Auburn, the Auburn Civil Service Commission and its three commissioners, and the Auburn Police Department, had discriminated against female applicants for police officer positions because of their sex. As required by Section 706(c) of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–5(c), plaintiffs' charges were referred to the Maine Human Rights Commission. After a preliminary investigation, the Commission found that reasonable grounds existed to believe that unlawful discrimination had occurred, and filed an action in the Androscoggin County, Maine, Superior Court, alleging that defendants had denied plaintiffs employment because of their sex, in violation of Section 4572(1)(A) of the Maine Human Rights Act, Me.Rev.Stat.Ann. tit. 5, § 4572(1)(A) (1979). Plaintiffs intervened in that action. Following a judgment in favor of defendants, plaintiffs appealed to the Maine Law Court, which reversed and remanded the case. *See Maine Human Rights Commission v. City of Auburn,* 408 A.2d 1253 (Me.1979). On remand the Superior Court found that defendants' hiring practices unlawfully discriminated against women, ordered defendants to develop a nondiscriminatory hiring process, directed the hiring of plaintiffs, and awarded plaintiffs back pay and statutory damages. Defendants' appeal of the order was successful in but one respect. The Law Court affirmed the Superior Court's conclusion that defendants' hiring procedures unlawfully discriminated against women, but noted that plaintiffs had never reached the final step of the job examination process, an agility test. The Law Court held that before defendants could be required to hire plaintiffs, they must pass this test. *See Maine Human Rights Commission v. City of Auburn,* 425 A.2d 990 (Me.1981). Plaintiff Hall subsequently passed the agility test and has been employed by defendants. Plaintiff Bernard has not passed the agility test and has not been hired.

Meanwhile, in December 1979, plaintiff Hall filed the present action in this Court. The complaint essentially duplicated the complaint filed in the state court, asserting identical claims under Title VII, the Fourteenth Amendment, 42 U.S.C.A. §§ 1983 and 1985, and the Federal Law Enforcement Assistance Act, 42 U.S.C.A. § 3766. In February 1980, plaintiff Bernard intervened in the action. By agreement of the parties, further proceedings in this Court were stayed pending the outcome of the state court action. Following the second decision of the Maine Law Court, plaintiffs in March 1981 filed the present motions for attorneys' fees and costs. Plaintiff Hall seeks approximately $28,850 to compensate her attorney, Harold L. Lichten, Esquire, for 461.5 hours of legal work; and $1,679.05 for costs. Plaintiff Bernard seeks approximately $14,250 to compensate her attorney, Robert S. Hark, Esquire, for 187.20 hours of legal work; and $72.69 for costs. In addition, plaintiffs request $3,579.50 to compensate Robert E. Mittel, Esquire, for 40.9 hours spent by him and 20.5 hours spent by his law clerk in prosecuting the present applications for attorneys' fees; and $260.28 for his costs.

All counsel agree that the only issues remaining in this case are whether plaintiffs are entitled to attorneys' fees for the services of their attorneys in the state court action and in the present action, and if either or both plaintiffs are so entitled, the amount of such fees.

## II.

### *Preliminary Issues*

◼ Section 706(k) of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–5(k), authorizes the court to allow a reasonable attorney's fee to the prevailing party in an

action under Title VII of the Act. A federal court may make the award even though the party prevails in a state forum. *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980).

The statute authorizes the award of attorney's fees only to a "prevailing party." Defendants point out that in the state court plaintiffs explicitly sought back pay and seniority, and implicitly sought instatement as police officers. Defendants do not contest that plaintiff Hall, who has been hired by defendants, prevailed in the state court proceeding. They argue, however, that because plaintiff Bernard failed the agility test and never received instatement, back pay or seniority, she cannot be considered a "prevailing party."

Defendants' argument ignores the fact that Bernard sought and won the right to be judged on nondiscriminatory job criteria. This achievement alone establishes her as a prevailing party.[1] *See, e.g., Boyd v. Ozark Air Lines,* 568 F.2d 50 (8th Cir.1977); *Brown v. Gaston County Dyeing Machine Co.,* 457 F.2d 1377 (4th Cir.), *cert. denied,* 409 U.S. 982, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972); *E.E.O.C. v. Murphy Motor Freight Lines,* 488 F.Supp. 381 (D.Minn.1980); S.Rep. No. 94–1011, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Ad.

News 5908, 5912 (accompanying Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C.A. § 1988); H.R.Rep. No. 94–1558, 94th Cong., 2d Sess. 7 (1976) (accompanying same). *Cf. Mills v. Electric Auto-Lite,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) (awarding attorney's fees where stockholder derivative suit established violation of law despite fact that relief might never be forthcoming); *Bagby v. Beal,* 606 F.2d 411 (3d Cir.1979) (awarding attorney's fees where plaintiff won right to a hearing despite fact that plaintiff ultimately lost on merits). *See generally Hensley v. Eckerhart,* —— U.S. ——, ——, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (party "prevails" if party succeeds on any significant issue which achieves some of the benefit sought). Both plaintiffs must therefore be considered prevailing parties.[2]

Defendants also contend that both plaintiffs should be denied attorneys' fees because available to them, free of charge, were the services of an attorney for the Maine Human Rights Commission.[3] Indeed, defendants note, the lawsuit in state court was brought on plaintiffs' behalf by the Commission; plaintiffs were merely intervenors. Defendants argue that "it would be grossly unfair to transfer to defendants the greatly increased cost of litigating the matter with three lawyers rather than one."

---

1. It is, of course, true that a person may not seek a judicial declaration that certain job criteria are discriminatory if he or she has already been found unqualified for the job based on clearly permissible criteria. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Here, however, at the outset of the lawsuit it was far from clear that Bernard was ineligible for the job sought. Indeed, it was defendants' discriminatory practices that precluded Bernard from reaching the agility test stage of the screening process and thereby precluded her from discovering that she was ineligible for the employment. In these circumstances the Court will not charge the plaintiff with the responsibility of knowing at the outset of the lawsuit that she ultimately would properly be found ineligible for employment.

2. *Harrington v. Vandalia-Butler Bd. of Education,* 585 F.2d 192 (6th Cir.1978), *cert. denied,* 441 U.S. 932, 99 S.Ct. 2053, 60 L.Ed.2d 660

(1979), cited by the defendants, is not to the contrary. In that case the plaintiff was denied all relief sought.

3. The Commission's action was brought pursuant to the Maine Human Rights Act, Me.Rev. Stat.Ann. tit. 5, §§ 4611–4613. These statutory sections authorize the Commission after receipt of a complaint alleging sex discrimination to investigate the complaint and upon a finding that the complaint has merit to file a civil action on behalf of the victim. Section 4613 states:

 Any such action shall be brought in the name of the commission for the use of the victim of the alleged discrimination ... and the commission shall furnish counsel for the prosecution thereof. Any person aggrieved by the alleged discrimination may intervene in such an action.

■ Insofar as defendants' argument is merely that defendants ought not be held liable for efforts of plaintiffs' attorneys that duplicated the efforts of the attorney for the Commission, the argument is unassailable. *See Hensley v. Eckerhart, supra,* —— U.S. at ——, 103 S.Ct. at 1939–40. Plaintiffs are not at liberty to charge defendants for the unnecessary consumption of legal resources. *Id.* To the extent that defendants propose to bar plaintiffs from recovering fees for efforts of plaintiffs' attorneys that do not duplicate steps taken by the Commission's attorney, however, defendants' argument must be rejected. *New York Gaslight Club v. Carey, supra,* makes clear that the mere availability of the Commission's attorney is not enough to deny plaintiffs their attorneys' fees where the Commission's attorney did not act. *Id.,* 447 U.S. at 68–70, 100 S.Ct. at 2033–2034. *See also Donnell v. United States,* 682 F.2d 240, 245–51 (D.C.Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983) (intervenors on side of United States in a successful suit entitled to fee award if they contributed substantially to success of litigation); *E.E.O.C. v. Sage Realty Co.,* 521 F.Supp. 263, 269–70 (S.D.N.Y.1981) (intervenors entitled to attorneys' fees to the extent that attorneys' work does not duplicate that of government counsel); *E.E.O.C. v. Murphy Motor Freight, supra,* 488 F.Supp. at 389 (intervenors entitled to fees). The uncontroverted affidavits of Lichten and Hark, and that of William J. Kelleher, Esquire, the attorney who handled the case on behalf of the Commission, show that Lichten and Hark contributed substantially to the success of the litigation. Plaintiffs are therefore entitled to attorneys' fees to the extent that the efforts of their counsel did not duplicate the efforts of the Commission's counsel.

■ Defendants also seek to exclude from reimbursement a portion of Lichten's time that is not supported by contemporaneously prepared time records. Although attorneys' fees generally may not be awarded absent such records, *Souza v. Southworth,* 564 F.2d 609, 612 (1st Cir.1977), the special circumstances of this litigation warrant relaxation of this rule. Lichten kept detailed records until December 31, 1979, when the Maine Law Court held that counsel fees were not available in employment discrimination actions under the Maine Human Rights Act. *See Vance v. Speakman,* 409 A.2d 1307, 1311–1312 (Me.1979). On June 9, 1980, the United States Supreme Court held that Title VII authorizes a federal court to award attorney's fees for legal services in state employment discrimination proceedings, *New York Gaslight Club v. Carey, supra,* 447 U.S. at 60–71, 100 S.Ct. at 2029–2035, thus rekindling the possibility that plaintiffs would be entitled to attorneys' fees. Upon reading *Carey,* Lichten recommenced keeping time sheets. In light of these circumstances and the fact that Lichten has provided the Court with a sworn affidavit detailing his activities during the period in question, it would be unfair to deny him recovery for that period and the Court will not do so. *See Souza v. Southworth, supra,* 564 F.2d at 612.

Finally, defendants contend that plaintiffs cannot seek reimbursement for the fees and costs of attorney Mittel in prosecuting the applications for attorneys' fees. Defendants concede that as a general rule such costs and fees may be recovered, *see Lund v. Affleck,* 587 F.2d 75, 77 (1st Cir. 1978), but argue that the fact that plaintiffs' attorneys retained another attorney to seek attorneys' fees rather than filing the motions for attorneys' fees themselves ought to preclude the operation of the general rule.

■ Defendants point out that the usual practice is not to retain separate counsel and that the retention of separate counsel entails additional costs in that the new attorney must be educated as to the underlying action. Plaintiffs argue that the retention of separate counsel for the application for attorneys' fees is desirable in that separate counsel can more objectively evaluate

and more freely argue many issues relevant to the attorneys' fees claim, *e.g.*, the quality and efficiency of counsel's work.

■ Although plaintiffs' argument has merit, the Court can find no authority for awarding costs beyond those that would have been incurred had counsel in the underlying action personally prosecuted the attorneys' fee applications. *Cf. Shadis v. Beal*, 703 F.2d 71, 73 (3d Cir.1983) (awarding fees under 42 U.S.C. § 1988 to separate counsel only to the extent separate counsel "stands in [original counsel's] shoes"). On the other hand, so long as the extra costs associated with the retention of separate counsel are disallowed, defendants appear to be unprejudiced by the retention of separate counsel. Thus, this Court will disallow only that portion of Mittel's fees that can fairly be attributed to tasks that Lichten and Hark would not have had to perform had they personally prosecuted the attorneys' fees motions.

### III.

*Calculation of the Attorneys' Fees*

The Court of Appeals for the First Circuit has endorsed the "lodestar" method of calculating attorneys' fees. *See Miles v. Sampson*, 675 F.2d 5, 8 (1st Cir.1982); *Furtado v. Bishop*, 635 F.2d 915, 919–20 (1st Cir.1980). *See also Hensley v. Eckerhart, supra*, —— U.S. at ——, —— & n. 9, 103 S.Ct. at 1939, 1940 & n. 9 (implicitly endorsing "lodestar" method). Accordingly, this Court will first determine the number of hours that plaintiffs' counsel reasonably expended and the reasonable hourly rate, and then consider whether any adjustment to the "lodestar" figure is appropriate.

#### A. *The Number of Hours*

Recent decisions of the United States Supreme Court and the Court of Appeals for the First Circuit make clear that the burden is on plaintiffs' attorneys to submit full and specific accountings of their time, that is, to submit affidavits that are based upon contemporaneous time records and that give specifics such as dates and the nature of the work performed. *See, e.g., Hensley v. Eckerhart, supra*, —— U.S. at ——, 103 S.Ct. at 1939; *Souza v. Southworth, supra*, 564 F.2d at 612; *King v. Greenblatt*, 560 F.2d 1024, 1027 (1st Cir.1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978). *See also National Ass'n of Concerned Vets v. Secretary of Defense*, 675 F.2d 1319 (D.C. Cir.1982) (per curiam). The affidavits must be sufficiently detailed to allow this Court to determine whether any particular item of work went to an issue upon which plaintiff did not prevail, *see Hensley, supra*, —— U.S. at —— —— & n. 12, 103 S.Ct. at 1939–41 & n. 12; *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978), or took an excessive amount of time, *see, Hensley, supra*, —— U.S. at ——, 103 S.Ct. at 1940–41; *Furtado v. Bishop, supra*, 635 F.2d at 920. In addition, the affidavits must allow the Court to ascertain whether or not there has been unwarranted duplication of effort, *see, Hensley, supra*, —— U.S. at ——, 103 S.Ct. at 1940–41; *Furtado v. Bishop, supra*, 635 F.2d at 920, and to distinguish between

> legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available.

*King v. Greenblatt, supra*, 560 F.2d at 1027.

In this case plaintiff Hall seeks attorney's fees for 461.5 hours spent by Attorney Lichten as her counsel. Plaintiff Bernard requests attorney's fees for 187.20 hours spent by Attorney Hark on her behalf. Plaintiffs also seek recovery for time spent by Attorney Mittel (40.9 hours) and his clerk (20.5 hours) presenting the present applications for attorneys' fees. Defendants have objected on a variety of grounds to a substantial number of the requested hours. Applying the principles outlined above, the Court has determined that 74.75 hours of Lichten's time, 12.91 hours of

Hark's time, and 12.8 hours of Mittel's time must be disallowed. In addition, 1.58 hours of Lichten's time must be compensated at a lower rate.

█ Lichten's affidavit lists 8 hours and 40 minutes spent before his first meeting with his client. As the affidavit does not disclose the connection between that time and the underlying case, that time is disallowed.

Many of the entries on Lichten's affidavit refer to meetings or conversations. A number of these entries fail to disclose the topic of conversation and are with persons whose connection with the underlying case has not been made clear to the Court.[4] These entries, totaling 4 hours and 10 minutes, are disallowed.

Several entries on the affidavits submitted by Lichten and Hark are challenged as involving time spent on issues that were collateral to the underlying action.[5] In the absence of explanation, these entries, totaling 25 hours and 40 minutes, of Lichten's time and 1 hour of Hark's time must be disallowed.

Similarly, a number of the entries in Mittel's time records, totaling 4.7 hours, are so vague as to raise the possibility that they had nothing to do with this case.[6] These will be disallowed.

In several instances Lichten and Hark inconsistently recorded the time spent in meetings and conversations with each other. In one instance the disparity between the times was so small that the Court has merely disallowed the excess of the larger number over the smaller one.[7] In all other instances the Court has entirely disallowed the entries.[8] See Furtado v. Bishop, supra, 635 F.2d at 922. These disallowances total 6 hours and 45 minutes of Lichten's time and 10 minutes of Hark's time.

█ Defendants argue that certain activity of plaintiffs' attorneys was duplicative. Plaintiffs' filings address but fail to rebut this charge. Consequently, it appears appropriate to follow the suggestion contained in Furtado and disallow one-half of the time challenged.[9] See Furtado v. Bishop, supra, 635 F.2d at 923. These disallowances total 29½ hours for Lichten and 11¾ hours for Hark.

4. See Lichten Affidavit: 11/17/78 ("Ann Lobacz-interview," 40 minutes); 11/21/78 ("Mrs. Leonard-meeting," 90 minutes); 1/15/79 ("Meeting with Libby re: federal case," 2 hours). Entries on October 24, 1978 and October 25, 1978 concerning a J. Boucles, and on October 24, 1978 concerning a J. Hill have already been disallowed as time spent before an attorney-client relationship was entered into.

5. See Lichten Affidavit: 7/19/79 ("Letter to Libby re: LEAA complaint & research on LEAA claim," ½ hour); 7/25/79 ("Draft LEAA complaint," 20 minutes); 9/20/79 ("Letter to Gary Libby," 10 minutes); 10/4/79–10/15/79 (all entries during this period, totaling 15 hours and 10 minutes); 3/10/80 ("Prep. for Hall fact findings—Portland to do research," 3 hours); 3/31/80 ("Fact finding on agility test," 2½ hours); 3/10/81 ("Conf. with Rand, Kelleher & Hark; Reviewed P.A.T. Data & researched validity issue," 4 hours).

See also Hark Affidavit: 4/1/80 ("Conference with client; Drafting complaint to Maine Human Rights Commission," 1 hour).

6. 5/9/81 ("Dictation of correspondence," .4 hour); 6/28/81 ("Review of documents and

dictation of letters," .5 hour); 11/19/81 ("Review incoming correspondence," .2 hours); 6/10/82 ("Dictation of correspondence," .1 hour); 6/18/82 ("Misc. tele. confs.," .4 hour); 7/30/82 ("Estimated court and wrapup time," 3.0 hours); 10/18/82 ("Review letter and memo," .1 hour); 11/16/82 ("Tele. confs. and letter, .1 hour).

7. 11/1/78 (Conference of counsel, 15 minutes of Lichten's time disallowed).

8. 11/16/78 (Phone conference, 45 minutes of Lichten's time, 10 minutes of Hark's time); 2/24/81 (Conference of counsel, 1 hour of Lichten's time, no time for Hark); 3/6/81 (Phone conversations, 45 minutes of Lichten's time, no time for Hark); 3/10/81 (Conference, 4 hours of Lichten's time, no time for Hark).

9. In December 1978 Lichten spent 6½ hours preparing a post-trial brief, while Hark spent 7¾ hours preparing a similar brief. 3¼ hours of Lichten's time and 3⅞ hours of Hark's time is disallowed. In March and April 1979 Lichten and Hark spent 52½ hours and 15¼ hours respectively on a Law Court brief. 26¼ hours of Lichten's time and 7⅞ hours of Hark's time is disallowed.

■ Defendants contend and plaintiffs' affidavits fail to deny that 1 hour and 35 minutes spent by Lichten on November 21 and 22, 1978 was work that a clerical person could have performed. Consequently, that 1 hour and 35 minutes will be compensated at a lower rate.

It is apparent that much of Mittel's activities during 1981 as disclosed by his time records involved familiarizing himself with the case. The Court feels it appropriate to disallow 8 of these hours.

■ The remaining hours, totaling 386.-75 hours for Lichten (including 1.58 hours of clerical time), 174.29 hours for Hark, 28.1 hours for Mittel and 20.5 hours for Mittel's law clerk, will be allowed. The Court finds that all the remaining time "is consistent with a standard of reasonable efficiency and productivity," *Furtado v. Bishop, supra,* 635 F.2d at 920; that is, was "reasonably expended," *Hensley v. Eckerhart, supra,* —— U.S. at ——, 103 S.Ct. at 1940. The Court has considered and rejects each of the other objections of defendants. The Court will not discuss each objection, but will note its view that the motions for stay and summary judgment in the state court action, presenting issues upon which plaintiffs did not prevail, did not go to claims sufficiently fractionable from claims upon which the plaintiffs prevailed to warrant denial of the time spent thereon. *See Hensley v. Eckerhart, supra,* —— U.S. at —— – ——, 103 S.Ct. at 1940–43; *Lamphere v. Brown,* 610 F.2d 46, 47 (1st Cir.1979); *Copeland v. Marshall,* 641 F.2d 880, 892 n. 18 (D.C.Cir.1980) (en banc). *Cf. Miles v. Sampson, supra,* 675 F.2d at 8–9; *Nadeau v. Helgemoe, supra,* 581 F.2d at 278–79. Finally, the Court rejects defendants' request that a significant number of hours in addition to those disallowed above be disallowed for failure to adequately specify the nature of the task performed during the time period. The

Court agrees that a number of other entries on the Hark and Lichten affidavits are less detailed than is desirable.[10] Nevertheless, special circumstances compel the Court to be somewhat more lenient in this case than it would otherwise be. The underlying action was one of great significance to the development of Maine's sex discrimination law. It was handled without fee at a high level of competence. In addition, the time records presented to this Court, while perhaps reflecting an inadequate understanding of the rigorous scrutiny to which fee petitions are generally subject, clearly and unequivocally demonstrate that plaintiffs' counsel are acting in good faith and with circumspection concerning the amount of fees sought. In these circumstances, the Court will disallow only the hours noted above.

**B. *The Hourly Rates***

The next step in calculating the "lodestar" is the determination of appropriate hourly rates. The appropriate hourly rate is "that prevailing in the community for similar work." *Maceira v. Pagan,* 698 F.2d 38, 40 (1st Cir.1983) (quoting *Copeland v. Marshall, supra,* 641 F.2d at 892).

■ Lichten requests reimbursement at a rate of $50.00 per hour. Hark requests reimbursement at a rate of $60.00 per hour for hours expended during 1978–80, and $70 per hour for hours expended during 1981. Defendants have not seriously challenged the reasonableness of these rates. They are supported in the affidavits submitted to the Court, and the Court finds them to be reasonable. Mittel has submitted no affidavits to support his request for compensation at a rate of $80.00 per hour for his time and $15.00 per hour for his law clerk's time. However, defendants also have not objected to these rates and they do not appear to be unreasonable. Consequently they too will

---

**10.** For example, Lichten's entry on November 2, 1978 reads "Meeting with C. Hall & research." Given the date and the chronology of events in this case, this Court can make a reasonable guess as to the general subject matter of that meeting and research; it would be highly preferable if all guesswork were eliminated, however.

be accepted. Finally, in the absence of any suggestion from counsel, the Court will compensate "clerical time" at the rate of $10 per hour.

The analysis above leads to the calculation of the following "lodestar" figures:

Attorney Lichten

| | | | | |
|---|---|---|---|---|
| 385.17 hours | at | $50/hour | = | $19,258.50 |
| 1.58 hours | at | $10/hour | = | 15.80 |
| Total | | | | $19,274.30 |

Attorney Hark

| | | | | |
|---|---|---|---|---|
| 166.72 hours | at | $60/hour | = | $10,003.20 |
| 7.57 hours | at | $70/hour | = | 529.90 |
| Total | | | | $10,533.10 |

Attorney Mittel

| | | | | |
|---|---|---|---|---|
| 28.1 hours | at | $80/hour | = | $ 2,248.00 |
| Clerk's time | | | | |
| 20.5 hours | at | $15/hour | = | 307.50 |
| Total | | | | $ 2,555.50 |

**C. Adjustment to the "Lodestar"**

 Plaintiff suggests that "lodestar" ought to be multiplied by 1.25, because of the importance of the case, the quality of counsel's work, and the contingent nature of the fee. The Court has already taken these factors into consideration in allowing somewhat less detailed affidavits than otherwise might be required. Plaintiffs' counsel are therefore not entitled to an adjustment of the "lodestar" figure as well.

## IV.

### Costs

As reimbursement for costs Lichten requests $1,679.05, Hark requests $72.69, and Mittel requests $260.28. Defendants object only to that portion of Lichten's request that constitutes reimbursement for expert witness fees. Defendants do not contend that expert witness fees are generally not reimbursable. Rather, defendants argue that Lichten's failure to utilize a state court procedure by which he might have been able to receive reimbursement for expert witness fees bars the award of such fees here.

 Defendants cite no case in support of the proposition that Lichten's failure to seek expert witness fees in the state court bars recovery here. Moreover, the proposition makes no sense in the present circumstances. Plaintiffs could not proceed in state court to obtain attorneys' fees. *Vance v. Speakman, supra,* 409 A.2d at 1311–12. Defendants' suggestion, if adopted, would mandate an unnecessary bifurcation of the already unwieldy process by which prevailing parties are reimbursed for the expenses of their lawsuits. The Court will allow the costs.

## V.

### Order

In accordance with the above, the Court makes the following awards of attorneys' fees and costs to plaintiffs' counsel:

Harold L. Lichten

| | | |
|---|---|---|
| Attorney's Fees | $19,274.30 | |
| Costs | 1,679.05 | |
| Total— | | $20,953.35 |

Robert S. Hark

| | | |
|---|---|---|
| Attorney's Fees | $10,533.10 | |
| Costs | 72.69 | |
| Total— | | $10,605.79 |

Robert E. Mittel

| | | |
|---|---|---|
| Attorney's Fees | $2,555.50 | |
| Costs | 260.28 | |
| Total— | | $ 2,815.78 |

IT IS SO ORDERED.