INMATES OF THE MAINE STATE
PRISON, et al.,

v.

George A. ZITNAY, et al.

Civ. No. 78–90 SD.

United States District Court,
D. Maine.

July 23, 1984.

Paul G. Thibeault, Pine Tree Legal Assistance, Bangor, Me., Gary C. Wood, Auburn, Me., for plaintiffs.

Harold Lichten, Tureen & Margolin, Portland, Me., on motion for attorneys' fees.

Gail Ogilvie, Asst. Atty. Gen., William H. Laubenstein, III, Asst. Atty. Gen., Augusta, Me., for defendants.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, Senior District Judge.

Paul G. Thibeault, Esquire, and Gary C. Wood, Esquire, each seek an award of attorneys' fees and costs pursuant to the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, for their services as counsel for the plaintiffs in the above-entitled action. Their motions are supported by affidavits and time sheets. Defendants object both to the propriety of any award and to the amounts requested. A hearing has been held, and counsel have submitted written and oral arguments. To the extent hereinafter set forth, counsel's requests for attorneys' fees and costs are granted.

### I.

#### Background of the Case

This class action was brought under 42 U.S.C. § 1983 on May 5, 1978, on behalf of all inmates at the Maine State Prison, Thomaston, Maine (MSP), who have been confined or who may be confined in Administrative Segregation at the MSP. The action was subsequently consolidated with two related class actions filed by inmates at the MSP: Civil No. 79–8 P brought on behalf of all inmates who have been confined or may be confined in Protective Custody; and Civil No. 79–76 brought on behalf of all inmates who have been confined or may be confined in the General Population. The defendants in the actions, sued in their individual and official capacities, are the Governor of the State of Maine, the Commissioner of the Department of Corrections, and the Warden of the MSP.

Plaintiffs in the present action (the Administrative Segregation plaintiffs) alleged that the conditions under which they were confined violated the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, as well as various provisions of state law. They also alleged that the process followed in assigning inmates to Administrative Segregation status violated the Fourteenth Amendment Due Process Clause and the provisions of a consent decree entered by this Court on January 4, 1973, in *Inmates v. Mullaney*, Civil No. 11–187, as amended by judgment entered September 27, 1977, and clarified by order entered on May 10, 1978.

The three inmates cases followed a long and tortuous path to their final disposition in the opinion and order entered by this Court on June 22, 1983 in *Lovell v. Brennan*, 566 F.Supp. 672 (D.Me.1983), *aff'd*, 728 F.2d 560 (1st Cir.1984). The relevant facts and procedural history of the litigation are set forth in that opinion, and need not be repeated here. A brief summary will suffice for present purposes.

Evidentiary hearings were held in the Administrative Segregation and Protective Custody cases in the fall of 1979 and early 1980. Twice during those hearings the Court and counsel toured the prison. Prior to final briefing, in April 1980, defendants instituted a lockdown at MSP. A new warden was appointed and substantial im-

provements were made in the prison's physical plant, staffing, and programs. This occasioned a new round of discovery and further evidentiary hearings in March, June and July, 1981. During the summer of 1982, after negotiations had failed to resolve the cases, comprehensive briefs were prepared and filed. Oral argument was had on October 15, 1982, and the Court and counsel made a final tour of MSP on November 3, 1982.

In its June 22, 1983 opinion and order, the Court concluded that the procedures followed by defendants in assigning inmates to Administrative Segregation violated the terms of the 1973 consent decree, and that use of "restraint cells" by defendants violated the Eighth and Fourteenth Amendments. It issued an order enjoining future violations. The Court also found that other conditions of confinement at the prison did not currently violate the Constitution or the consent decree, and dismissed the remaining claims asserted by the plaintiffs in the consolidated actions. The Court specifically noted, however, that:

> [C]onditions at MSP as disclosed by the evidence received at the 1981 hearings and the Court's observations during its November 1982 tour of the prison differ markedly from those which were revealed by the evidence at the 1979–80 hearings and observed by the Court when it viewed the prison at that time. There is no question that substantial improvements have been made. Although the Court is satisfied that defendants have endeavored in good faith to ameliorate the conditions in which inmates are confined at MSP, it is clear that this litigation in large measure has sparked the improvements made.

*Lovell v. Brennan,* 566 F.Supp. at 677. The Court also observed:

> As noted above, defendants have improved the conditions at the prison only under the very real threat of this lawsuit and only to the minimum extent mandated by the Eighth Amendment.

*Id.* at 689.

In the fall of 1983, the attorneys for plaintiffs' in all three inmates cases sought attorneys' fees and costs under 42 U.S.C. § 1988. Plaintiffs and defendants have been able to reach agreement on the amount of compensation due to counsel for the Protective Custody and General Population plaintiffs, and the Court has entered orders awarding $18,839.75 to counsel for the Protective Custody plaintiffs, and $130,528.00 to counsel for the General Population plaintiffs. There only remain for the Court's determination the unresolved requests of attorneys Thibeault and Wood for awards of attorneys' fees and costs for their services on behalf of the Administrative Segregation plaintiffs.

Attorney Thibeault presently seeks attorneys' fees for 670.5 hours of work and costs of $2,030.39 (including $560 for 56 hours of work performed by Mark Weaver, then a law student). Attorney Wood now seeks attorneys' fees for 429.1 hours of work and costs of $1,724.65 (including $525 for the services of Dr. John Bishop, a psychologist). The parties have stipulated to a $55 per hour rate for purposes of determining Attorney Thibeault's "lodestar" amount, a $45 per hour rate for purposes of determining Attorney Wood's "lodestar" amount, and a $10 per hour rate for Mark Weaver's work. The parties have also stipulated that an award of 8% interest per annum for three years on half of the amounts awarded would be reasonable compensation for the delay in payment. *See Gabriele v. Southworth,* 712 F.2d 1505, 1507 (1st Cir.1983).

II.

*Entitlement to Attorneys' Fees*

■ Title 42 U.S.C. § 1988 provides that in federal civil rights actions, including section 1983 actions, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." As the First Circuit has observed, "[t]he district court 'has broad discretion to make the initial determination of whether to allow an

award of fees,' but that discretion is controlled by the standard 'that a successful plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." ' " *Burke v. Guiney,* 700 F.2d 767, 771 (1st Cir.1983) (citations omitted); *see Hensley v. Eckerhart,* 461 U.S. 424, ——, 103 S.Ct. 1933, 1936, 76 L.Ed.2d 40 (1983).

■ Defendants argue that plaintiffs were not prevailing parties, and therefore not entitled to attorney's fees. The Court disagrees. "A plaintiff who succeeds on 'any significant issue in litigation which achieves some of the benefits [he] sought in bringing suit' may be considered a prevailing party for these purposes, even if vindication of his rights is achieved through a consent decree or without formal relief." *White v. New Hampshire Dep't of Employment Security,* 679 F.2d 283, 285 (1st Cir.1982) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)); *see Hensley v. Eckerhart,* 461 U.S. at ——, 103 S.Ct. at 1938. Moreover, "when plaintiff's lawsuit acts as a 'catalyst' in prompting defendants to take action to meet plaintiff's claims, attorney's fees are justified despite the lack of judicial involvement in the result." *Nadeau v. Helgemoe,* 581 F.2d at 279 (citations omitted).

■ There can be little doubt that the Administrative Segregation plaintiffs were "prevailing parties" within the meaning of section 1988, for they have succeeded in both of the major areas of their complaint. This court granted them declaratory relief and an injunction on their process claim and one aspect of their conditions claims, *Lovell v. Brennan,* 566 F.Supp. at 697–98, and, although denying them formal relief on their remaining conditions claims, the Court noted that defendants had substantially improved conditions at the prison since the commencement of the litigation and "it is clear that this litigation in large measure has sparked the improvements made." *Id.* at 677. Most of these improvements are detailed in the Court's previous opinion. *Id.* at 692–93.

Plaintiffs are entitled, as prevailing parties, to an award of attorney's fees under section 1988.

### III.

### *Amount of Attorney's Fees*

#### A. *Methodology*

In computing the appropriate fee to be awarded under section 1988, the First Circuit has prescribed the following procedure.

First, a "lodestar" fee is determined by multiplying a reasonable hourly rate by the number of hours reasonably expended on the lawsuit. Second, the "lodestar" is adjusted up or down to reflect factors, such as the contingent nature of success in the lawsuit or the quality of legal representation, which have not *already* been taken into account in computing the "lodestar" and which are shown to warrant the adjustment by the party proposing it.

*Miles v. Sampson,* 675 F.2d 5, 8 (1st Cir. 1982) (original emphasis); *see Blum v. Stenson,* —— U.S. ——, ——, 104 S.Ct. 1541, 1543, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart,* 461 U.S. at —— – ——, 103 S.Ct. at 1938–41; *Maceira v. Pagan,* 698 F.2d 38, 39 (1st Cir.1983); *Copeland v. Marshall,* 641 F.2d 880, 890–92 (D.C.Cir. 1980) (en banc) (seminal opinion on lodestar method).

■ The "lodestar" method of calculating attorney's fees is now reasonably well developed. The "most critical factor" is the "degree of success obtained." *Hensley v. Eckerhart,* 461 U.S. at ——, 103 S.Ct. at 1941. Where there are a number of claims, on some of which the plaintiff prevailed and on some of which the plaintiff did not prevail, and the work on those claims is separable, the amount of the award should be based on counsel's work on the issues on which they were successful; the court should simply disallow those hours spent by counsel pursuing the claims on which they were unsuccessful. *Id.; Miles v. Sampson,* 675 F.2d at 8; *Nadeau v. Helgemoe,* 581 F.2d at 279. Where the

claims are so intertwined that the hours cannot be divided on a claim-by-claim basis, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley v. Eckerhart,* 461 U.S. at ——, 103 S.Ct. at 1940. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee". In such cases, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.... The result is what matters." *Id.*

■ Calculation of the lodestar figure requires the court to separate work done according to the levels of expertise of the attorneys involved; eliminate time "beyond that consistent with a standard of reasonable efficiency and productivity"; and assign hourly rates "for the kinds of work done by those at different levels of expertise." *Furtado v. Bishop,* 635 F.2d 915, 920 (1st Cir.1980). The court may reduce or exclude time which is not specifically documented; is duplicative of other services; or proves inconsistent with other billings. *Id.* at 922; *Souza v. Southworth,* 564 F.2d 609, 612 (1st Cir.1977). Furthermore, in setting a reasonable hourly rate the court must consider the relative degree of experience and expertise of counsel as well as the particular kind of work performed. *Miles v. Sampson,* 675 F.2d at 9; *Furtado v. Bishop,* 635 F.2d at 920; *Copeland v. Marshall,* 641 F.2d at 892.

■ Determination of the amount of fees to be awarded according to the above guidelines is left to the sound discretion of the court, which cannot merely rely on the adversarial process to ferret out weaknesses, but should "[draw] on [its] own experience and wisdom" in making the determi-

nation. *Gabrielle v. Southworth,* 712 F.2d at 1507; *see Wojtkowski v. Cade,* 725 F.2d 127, 130 (1st Cir.1984). The court should be guided by the 12 *Johnson* factors [1] when determining the number of hours reasonably expended, the hourly rate to be charged, and what, if any, adjustment to the lodestar figure should be made. *Hensley v. Eckerhart,* 461 U.S. at —— n. 9, 103 S.Ct. at 1940 n. 9; *King v. Greenblatt,* 560 F.2d 1024, 1026–27 (1st Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978). Relevant costs and disbursements should then be added to the award. *Miles v. Sampson,* 675 F.2d at 10.

■ Once a lodestar figure is determined, the court must consider whether any adjustment is necessary. The First Circuit has made clear that this step is a "residual category that is relevant only when the parties point out factors that do not easily fit into the initial calculation of the lodestar." *Furtado v. Bishop,* 635 F.2d at 924; *see Blum v. Stenson,* —— U.S. at —— – ——, 104 S.Ct. at 1548–51. The burden of justifying departure from the lodestar norm is upon the party proposing the adjustment. *Id.; Copeland v. Marshall,* 641 F.2d at 892; *Furtado v. Bishop,* 635 F.2d at 924.

## B. Sufficiency of Records

■ Defendants ask the Court to disallow a substantial portion of the fee requests submitted by Attorneys Thibeault and Wood for "vagueness." There is no question but that when seeking attorney's fees plaintiffs' attorneys must submit a full and accurate accounting of their time; the accounting must be based on contemporaneous records; and the accounting must give specifics such as the dates and nature of the work performed. *Hensley v. Ecker-*

---

1. The *Johnson* factors are:
    1) the time and labor required; 2) the novelty and difficulty of the question presented; 3) the skill required to perform the legal services; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by client or circumstanc-

es; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorney; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; 12) awards in similar cases.
    *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–719 (5th Cir.1974).

*hart*, 461 U.S. at ——, ——, 103 S.Ct. at 1938, 1940; *Wojtkowski v. Cade*, 725 F.2d at 130; *Souza v. Southworth*, 564 F.2d at 612. The record should be sufficiently detailed to enable the Court to determine what time was spent on claims on which the plaintiffs did not prevail. *Hensley v. Eckerhart*, 461 U.S. at —— & n. 12, 103 S.Ct. at 1941 & n. 12; *Wojtkowski v. Cade*, 725 F.2d at 130; *Nadeau v. Helgemoe*, 581 F.2d at 279. The record must also be detailed enough to enable the Court to determine if plaintiffs' attorney is claiming compensation for hours that are redundant, excessive, or otherwise unnecessary, and to determine if the attorney has exercised "billing judgment" in submitting the fee application. *Hensley v. Eckerhart*, 461 U.S. at —— – ——, 103 S.Ct. at 1938–41.

■ The Court agrees with defendants that the records maintained by Thibeault and Wood fall woefully short of the standards set by *Hensley* and *Nadeau*. Many of their entries give no clue to the nature of the work done.[2] But the Court can infer, from its own experience with the case, what the general subjects of such entries were, and is confident that counsel have acted in good faith by listing only time actually spent in connection with the present action. *See Wojtkowski v. Cade*, 725 F.2d at 130 ("The Court ... may bring to bear its knowledge and experience concerning ... the time demands of the particular case."). The unique circumstances of this case prompt this Court to be somewhat more lenient than it would otherwise be. *See Hall v. City of Auburn*, 567 F.Supp. 1222, 1229 (D.Me.1983). The underlying action was of great importance in assuring that the State of Maine continued to meet its constitutional obligation to provide at least minimally humane prisons, and the

case was handled by counsel without compensation at a high level of competence over an extended period of years. *See Id.* In addition, since plaintiffs' claims for relief were closely related and involved "a common core of facts," it is unnecessary to allocate the hours expended on each claim in order to separate out the time spent on unsuccessful claims. *See Hensley v. Eckerhart*, 461 U.S. at ——, 103 S.Ct. at 1940; *Nadeau v. Helgemoe*, 581 F.2d at 279. *Hensley*'s teaching is that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley v. Eckerhart*, 461 U.S. at ——, 103 S.Ct. at 1943. These plaintiffs achieved great success in this complicated case, and their attorneys deserve a substantial fee award. The Court rejects defendants' contention that a substantial portion of these fee requests be disallowed for "vagueness."

## C. Individual Fee Petitions

The Court now turns to the individual requests submitted by attorneys Wood and Thibeault.

*Attorney Wood.* Attorney Wood has documented 496 hours spent on this case. Of that time, 437.5 hours are said to have been spent on the merits and 58.5 hours on the fee petitions.[3] Wood concedes that 37.4 of the hours he claims for work on the merits and 29.5 of the hours he claims for work on the fee petitions are noncompensable. He thus claims a net of 400.1 hours for work on the merits and 29 hours for work on the fee petitions. The Court disallows 6.9 hours of the hours claimed for work on the merits as inconsistent with Thibeault's claims for the same activities.[4]

---

2. For example, a Wood entry for 1.0 hours on 1/19/78 reads "Conference with Paul"; another Wood entry for .8 hours on 11/3/78 reads "Telephone call to Charles Murphy (LD)"; another Wood entry for .3 hours on 4/26/79 reads "Letter to Client"; a Thibeault entry for 2.0 hours on 6/3/82 reads simply "Research"; another Thibeault entry for 2.5 hours on 12/8/80 reads "Conference with other counsel."

3. Wood and Thibeault are not requesting compensation for the time another attorney spent pursuing the fee application for them.

4. The following entries for calls or conferences with Thibeault are disallowed because Thibeault has no record of them: 1/27/78 (.25), 1/30/78 (1.35), 4/10/79 (.5), 1/29/80 (2), 4/7/80 (1), 10/7/80 (.2), and 12/11/80 (.2). The entry for 7/1/80 is reduced by 0.95 hours and the entry

*See Furtado v. Bishop,* 635 F.2d at 922. Defendants argue that Wood's claims should be further reduced for duplication, excessive time, and pursuit of unproductive avenues. Wood was a young lawyer when this lawsuit was begun, and undoubtedly was less efficient—but no less zealous—than a more experienced lawyer. For this reason, "billing judgment" prompts this Court to make a further reduction of 40 hours in Wood's claim. *See Hensley v. Eckerhart,* 461 U.S. at ——, 103 S.Ct. at 1940. But an examination of the affidavits and time sheets, and the Court's own familiarity with the case, convince the Court that the remaining 353.2 hours were reasonably expended by Wood in gaining relief for the Administrative Segregation plaintiffs, and 29 hours were reasonably spent by him in pursuit of an award of attorney's fees that has been vigorously contested by defendants.

The parties have stipulated that $45 per hour is a reasonable rate for Wood's time while performing legal services, given his experience and the type of work he performed in the case. This figure is supported by the affidavits submitted by plaintiffs concerning prevailing rates in the community, and allows for the inefficiencies inherent in the work of a young lawyer handling such a complex case. It is accepted by the Court.

Of the total hours claimed by Wood, 3.8 hours were spent performing clerical services [5] and 45.15 hours were spent traveling.[6] The parties have apparently agreed, and the Court finds, that $10 per hour was a reasonable rate to pay for clerical services of the type rendered by Wood at the time they were performed. Defendants urge the Court to disallow completely the time claimed for travel. Travel time is compensable at legal rates if legal services are performed during travel; travel time necessary to a case but during which legal services are not performed may be charged at a reduced rate. *See Miles v. Sampson,* 675 F.2d at 9; *Wuori v. Concannon,* 551 F.Supp. 185, at 200 (D.Me.1982). Wood has not shown that he was doing legal work for these plaintiffs during the 45.15 hours he has listed as travel time. The Court will therefore allow only $10 per hour, as a reasonable rate for the time Wood spent traveling. *See Miles v. Sampson,* 675 F.2d at 9.

Finally, the work involved pursuing a fee application should not be as demanding as pursuing substantive legal claims, so the Court will apply a rate of $35 per hour to the time Wood has documented for pursuing his fee applications. *See Gabrielle v. Southworth,* 712 F.2d at 1507. The Court is aware that Wood has already halved the number of hours he claims for work on his fee applications, but that reduction reflects the difficulty caused by the inadequacy of his time records; the Court's use of a lower rate reflects the nature of the work performed.

Based upon the foregoing, Attorney Wood's lodestar fee is computed as follows:

| | | | |
|---|---|---|---|
| Legal Work | 304.25 hours @ $45 | = | $13,691.25 |
| Fee Applications | 29.0 @ $35 | = | 1,015.00 |
| Travel Time | 45.15 @ $10 | = | 451.50 |
| Clerical Work | 3.8 @ $10 | = | 38.00 |
| | 382.2 hours | | $15,195.75 |

*Attorney Thibeault.* Attorney Thibeault has documented 722.5 hours spent on this case. Of that time, 668.4 hours were spent on the merits and 54 hours were spent on the fee petitions.[7] Of the 668.4 hours

---

for 7/11/80 is reduced by 0.45 hours to conform with Thibeault's time claims for the same activities. Wood's claims for 1/19/78 and 2/1/80 are not disallowed, because Thibeault recorded the same activities as occurring on 1/18/78 and 2/2/80, respectively.

**5.** This figure reflects entries on 2/16/79 (.5), 9/30/80 (.8), 11/20/80 (.5), 11/24/80 (1.0), 12/4/80 (.1), 12/6/80 (.7) and 12/11/80 (.2).

**6.** This figure reflects entries on 1/16/78 (.75), 1/19/78 (1.5), 2/27/78 (.4), 3/14/78 (3),

9/19/79 (3), 9/25/79 (2.3), 9/26/79 (1.6), 9/27/79 (2.3), 10/1/79 (1.5), 10/3/79 (1.5), 11/5/79 (.8), 11/6/79 (3), 12/12/79 (3), 12/16/79 (.5), 12/18/79 (3), 12/19/79 (1.5), 1/29/80 (.7), 2/1/80 (2), 2/4/80 (1), 9/23/80 (1), 10/15/80 (1), 11/14/80 (3), 11/21/80 (3), 12/5/80 (3) and 7/9/83 (.8).

**7.** There are still some small inconsistencies in Thibeault's request. In his September 6, 1983 affidavit he claims he spent a total of 668.4 hours on the merits; in his December 10, 1983

claimed for work on the merits, Thibeault concedes that 24.6 hours are not adequately documented. The Court has concluded that a total of 71.85 hours must be disallowed because they are not based on contemporaneous time records.[8] *See Hensley v. Eckerhart,* 461 U.S. at ——, 103 S.Ct. at 1938; *Wojtkowski v. Cade,* 725 F.2d at 130; *Nadeau v. Helgemoe,* 581 F.2d 275, 279 (1st Cir.1978). Defendants maintain that much of Thibeault's work was excessive or duplicative. Thibeault concedes that if he were to exercise billing judgment, as *Hensley* requires, *see* 461 U.S. at ——, 103 S.Ct. at 1940, he would reduce his claim by 50 hours. While this Court commends Thibeault's handling of this case, the Court believes that the claim should more appropriately be reduced by 80 hours. Finally, Thibeault concedes that 27 of the 54 hours claimed for work on the fee petitions should not be charged to defendants. The Court is satisfied that the remaining 516.55 hours were reasonably spent by Thibeault on the merits and 27 hours were reasonably expended by him in pursuit of attorney's fees.

The parties have stipulated that $55 per hour is a reasonable rate for Thibeault's time while performing legal services. Given his experience and the type of work he performed in the case, and the affidavits submitted concerning the prevailing rates in the community, the Court accepts $55 per hour as a reasonable rate at which to charge the time Thibeault spent performing legal services.

Like Wood, Thibeault claims a substantial number of hours for travel: a total of 102.2 hours.[9] A case of this type in a State such as Maine requires a great deal of travel, and defendants, like private parties,

may be charged therefor. *See Miles v. Sampson,* 675 F.2d at 9. Since there has been no showing that Thibeault was performing legal services during the time he was traveling, the Court will allow compensation for this time at the reduced rate of $10 per hour. *See id.; Wuori v. Concannon,* at 200.

Finally, the Court will apply a rate of $40 per hour to the time Thibeault spent pursuing his fee applications. *See Gabrielle v. Southworth,* 712 F.2d at 1507.

Attorney Thibeault's lodestar fee is thus computed as follows:

| | | | |
|---|---|---|---|
| Legal Work | 414.35 hours @ $55 = | | $22,789.25 |
| Fee Applications | 27.0 @ $40 = | | 1,080.00 |
| Travel Time | 102.2 @ $10 = | | 1,022.00 |
| | 543.55 hours | | $24,891.25 |

## D. Adjustment to the "Lodestar"

Both attorneys urge the Court to adjust their lodestar fees to reflect the contingent nature of the award. The First Circuit has made clear that the step involving adjustments to the lodestar is a "residual category that is relevant only when the parties point out factors that do not easily fit into the initial calculations of the lodestar." *Furtado v. Bishop,* 635 F.2d at 924; *see Blum v. Stenson,* —— U.S. at ——, 104 S.Ct. at 1549. The Court has already taken the contingent nature of the award into account in accepting the rather general descriptions of work submitted in support of the fee applications. The Court has also taken into consideration in fixing the lodestar fees the complexity and importance of the case, and the quality of counsel's work. No adjustment of the lodestar can be justified.

The one factor not considered by the Court in computing the lodestar fees is the

---

affidavit he claims he spent a total of 668.5 hours on the merits and 54 hours on the fee petitions, totaling 722 hours.

**8.** These hours are detailed in Appendices B & C to Thibeault's September 6, 1983 affidavit.

**9.** These hours were expended on 1/13/78 (2), 1/31/78 (2), 5/19/78 (2), 12/21/78 (2), 2/1/79 (3), 9/14/79 (2), 9/19/79 (3), 9/24/79 (3), 9/24/79 (3), 9/26/79 (2), 9/28/79 (3), 10/1/79 (1.5), 10/4/79 (1.5), 11/14/79 (3), 11/19/79

(2), 12/12/79 (3), 12/18/79 (3), 12/19/79 (3), 12/20/79 (1.5), 1/10/80 (2), 4/7/80 (1.4), 4/23/80 (1.8), 4/24/80 (2), 7/1/80 (1.5), 7/11/80 (1.5), 7/21/80 (3), 7/24/80 (2), 9/24/80 (3), 11/21/80 (3.5), 12/8/80 (2), 12/9/80 (2), 2/2/81 (3), 2/26/81 (2), 3/2/81 (2), 3/3/81 (2), 3/4/81 (2), 3/8/81 (2), 3/9/81 (2), 3/10/81 (2), 3/1/82 (2), 3/19/82 (2), 5/3/82 (2), 6/14/82 (2), 6/16/82 (2), 10/14/82 (2), 10/15/82 (2), 11/3/82 (3).

nearly six years that have elapsed since the suit was initiated in 1978 and during which counsel have not received any compensation for their services. The parties, with the Court's encouragement, have stipulated that an award of 8% interest per annum for three years on half of the awards will be reasonable compensation for the delay in payment of the fees. The Court will award interest in accordance with this stipulation. *See Gabrielle v. Southworth,* 712 F.2d at 1507.

## IV.

### Costs

Reasonable costs and disbursements are compensable under section 1988. *Miles v. Sampson,* 675 F.2d at 10. Attorney Wood seeks $1,724.65 for costs, and Attorney Thibeault seeks $2,030.39. The Court has examined the affidavits and is satisfied that counsel are charging only for actual disbursements for reasonable expenses. Only two components of the charges deserve special mention.

Thibeault's charges for expenses include $560 for 56 hours of time spent on the case by Mark Weaver, a law student. Thibeault does not have records of the actual amounts paid to the law student, but the parties have agreed that $10 per hour is the approximate expense plaintiffs would have incurred for these services. The Court allows $560 for Weaver's time.

Wood's charges for expenses include $525 for the services of Dr. John Bishop, a psychologist retained as an expert witness for plaintiffs. Defendants urge that this expense be disallowed "since plaintiffs did not prevail on any of the psychological issues." It is not this Court's task to become "deluged with [such] details." *See Gabrielle v. Southworth,* 712 F.2d at 1507. It was reasonable for the plaintiffs to seek the services of a psychological expert to make their case, and $525 is not an excessive charge for the services rendered. The Court finds that the $525 for Dr. Bishop's services was reasonably expended by plaintiffs in this case.

## V.

### Order

In accordance with the above, the Court makes the following awards of attorney's fees and costs to plaintiffs' counsel:

Gary C. Wood

| | |
|---|---|
| Attorney's Fees | $15,195.75 |
| Costs | 1,724.65 |
| Subtotal | $16,920.40 |
| Interest on ½ amount at 8% for 3 years | 2,197.22 |
| Total | $19,117.62 |

Paul G. Thibeault

| | |
|---|---|
| Attorney's Fees | $24,891.25 |
| Costs | 2,030.39 |
| Subtotal | $26,921.64 |
| Interest on ½ amount at 8% for 3 years | 3,495.92 |
| Total | $30,417.56 |

IT IS SO ORDERED.