Efrain MACEIRA, et al., Plaintiffs,
Appellees,

v.

Luis Enrique PAGAN, Defendant,
Appellee.

Local 901, International Brotherhood of
Teamsters, Chauffeurs, Warehousemen
and Helpers of America, Defendant, Appellant.

No. 82–1396.

United States Court of Appeals,
First Circuit.

Argued Nov. 2, 1982.

Decided Jan. 18, 1983.

Pedro J. Varela, Hato Rey, P.R., for appellant.

Ellis Boal, Detroit, Mich., for appellees.

Before CAMPBELL and BREYER, Circuit Judges, and HEMPHILL,** Senior District Judge.

BREYER, Circuit Judge.

The defendant Teamsters Union Local in the case of *Maceira v. Pagan,* 649 F.2d 9 (1st Cir.1981), *reversing* 501 F.Supp. 641 (D.P.R.1980), which was subsequently settled in plaintiffs' favor, appeals the district court's award of attorneys' fees to plaintiffs' lawyers, Ellis Boal of Detroit and Alejandro Torres-Rivera of San Juan. While all parties recognize the court's power to award fees to the prevailing party in this Landrum-Griffin Act case, 29 U.S.C. §§ 411 *et seq.* (1976), *see Hall v. Cole,* 412

U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1972), the Local claims that the award (as amended) of $53,812.50 to Boal, and $2,078.13 to Torres-Rivera, was too high. We do not believe the district court committed any error of law or abused its discretion. Consequently, we affirm its decision.

The court used the "lodestar" method for calculating a fee. Under that method it first finds the "lodestar," or reasonable hourly rate for each attorney and for the type of work he or she performed. It may then adjust the "lodestar" up or down to reflect special factors not already taken into account. These factors may include, for example, the contingent nature of the fee, possible delays in payment, unusual quality of representation, and so forth. *See, e.g. Miles v. Sampson,* 675 F.2d 5 (1st Cir.1982); *Furtado v. Bishop,* 635 F.2d 915, 920 (1st Cir.1980); *Copeland v. Marshall,* 641 F.2d 880 (D.C.Cir.1980) (en banc); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir.1976) (en banc) ("*Lindy II*"); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973) ("*Lindy I*"). Finally, it multiplies the resulting adjusted rate times the number of hours reasonably worked—which may in some cases be less than the hours actually worked. The final figure combines reasonably objective market factors with the court's own perception of the litigation. It is reviewable only for errors of law or abuse of discretion, *Furtado,* 635 F.2d at 920. And as the Third Circuit has pointed out, an appellate court will not be over ready to find abuse. "If the district court has applied the correct criteria to the facts of the case, then, it is fair to say that we will defer to its exercise of discretion." *Lindy II, supra,* 540 F.2d at 116 (*quoting Katz v. Carte Blanche Corp.,* 496 F.2d 747, 756 (3d Cir.) (en banc), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974)).

While we would have been helped had the district court set forth the facts supporting its conclusions in somewhat greater detail, *see Lindy I,* 487 F.2d at 166 n. 9, the record,

** Of the District of South Carolina, sitting by       designation.

when combined with our own knowledge of the case derived from the 1981 appeal, 649 F.2d 8, 9, is sufficient for us properly to evaluate the Local's claims—particularly since all parties have urged us to determine the correct fee here and not to remand the case. We therefore consider each of the Local's claims in turn.

First, the Local argues that the district court should not have compensated Boal at a basic "lodestar" rate of $100 per hour, because the prevailing rate in Puerto Rico, at least as of 1979, was "$75 for trial time and $65 an hour for other work performed." *Torres v. Hernandez Colon,* Civil No. 78–247 (D.P.R.1979). The Local does not dispute that $100 was Boal's ordinary Detroit rate. Thus, the issue is whether the court had to award Boal less than his ordinary rate because he was called to work in Puerto Rico, where ordinary rates are lower.

■ We believe the answer to this question turns on the reasonableness of hiring an out-of-town specialist. The reasonable hourly rate is usually stated to be "that prevailing in the community for similar work," *Copeland, supra,* 641 F.2d at 892. However, an out-of-town specialist may be able to command a somewhat higher price for his talents, both because of his specialty and because he is likely to be from a larger city, where rates are higher. *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760 (7th Cir.1982). If a local attorney could perform the service, a well-informed private client, paying his own fees, would probably hire local counsel·at the local, average rate. If the client hires a local specialist, he will ordinarily pay a premium rate. Where it is unreasonable to select a higher priced outside attorney—as, for example, in an ordinary case requiring no specialized abilities not amply reflected among local lawyers—the local rate is the appropriate yardstick. But, if the client needs to go to a different city to find that specialist, he will expect to pay the rate prevailing in that city. In such a case, there is no basis for concluding that the specialist's ordinary rate is unreasonably high. If one wishes to be literal, the "prevailing" rate "in the community"

for work performed by an outside specialist (where that outside specialist is reasonable) is most likely to be that outside specialist's ordinary rate, *see Copeland, supra,* 641 F.2d at 892. If the courts (without cause) award fees at less than that rate, they will tend to prevent those in smaller communities from obtaining the experienced legal counsel they may need, contrary to the policy behind awards of attorneys' fees to prevailing parties. *See, e.g. Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1972); *Newman v. Piggie Park Enterprises Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968); *Copeland, supra,* 641 F.2d at 890. Thus, it is not surprising that the Seventh Circuit concluded that it could be appropriate to award higher fees to those from outside the community, *Chrapliwy, supra,* and we have found no case suggesting the contrary.

■ In this case, the litigation at issue involved complex Landrum-Griffin Act issues and it concerned Teamster dissidents; Boal specialized in both these areas. There is no evidence that there were available lawyers with his degree of experience and specialization in Puerto Rico, or, if so, that they charged significantly lower fees. The Local has not shown that plaintiff's decision to retain Boal was unreasonable. Consequently, we believe the district court could reasonably begin with a $100 per hour figure.

■ Second, the Local contests the $50 per hour figure used for travel time. The Local suggests that $35 is appropriate. This figure, however, is roughly half of the $75/$60 that the Local argues is reasonable for non-travel time. Boal has asked the district court for travel compensation at one-half his regular rate. That seems to be the Local's theory as well. Thus, if $100 per hour is a reasonable regular rate, then in the context of this case and these arguments, $50 per hour is reasonable compensation for travel time.

■ Third, the Local argues that the district court erred in applying the same $100 hourly rate both to Boal's trial time and to

his other legal work. However, while *Miles v. Sampson, supra,* upon which the Local relies, indicates the importance of using more than one rate when appropriate, it does not hold that differential rates are *always* required. *Accord Copeland,* 641 F.2d at 892; *Furtado,* 635 F.2d at 920; *King v. Greenblatt,* 560 F.2d 1024, 1027 (1st Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978); *Perez v. University of Puerto Rico,* 600 F.2d 1, 2 (1st Cir.1979). *But cf. Palmigiano v. Garrahy,* 466 F.Supp. 732, 741 (D.R.I.1979), *aff'd,* 616 F.2d 598 (1st Cir.1980). In this case, we think the district court could find that Boal's specialized knowledge and skills in the labor field were as fully engaged in his out of court work as they were in court. Moreover, Boal's affidavit stated that $100 per hour was his *standard* rate; there is no suggestion that it applied only to trial time. Indeed, the trial took only seven hours out of the three hundred and ninety-six hours Boal spent on this case. Thus, a differential rate might as easily have worked in Boal's favor (by requiring a higher compensation for those seven hours) as in favor of the Local. We note the Local has not placed in issue the question of lower rates for such activities as reviewing documents or interviewing witnesses. We find no abuse of the district court's discretion.

■ Fourth, the Local attacks the district court's adjustment of the reasonable hourly rates for both Boal and local counsel Torres-Rivera to reflect the contingent nature of the fee. However, a court may within reasonable limits adjust the hourly rate "to compensate for the risk that the lawsuit would be unsuccessful and that no fee at all would be obtained." *Copeland,* 641 F.2d at 892; *Furtado,* 635 F.2d at 920. Such an adjustment, as the *Copeland* court recognized, must never duplicate any contingency factor which might already be included in the hourly rate itself. 641 F.2d at 893. Counsel initially requested an adjustment of 2.5. The Local opposed any contingency adjustment. The court picked a factor of 1.25. It seems clear here that at the outset counsel faced a strong likelihood they would not prevail. .They were to represent Teamster dissidents; the law on the major point at issue was unclear; the financial resources available seem to have been limited. An adjustment of 1.25 for "contingency" was not unreasonable.

■ Finally, the Local opposes the district court's additional upward adjustment of 1.25, made to reflect the "exemplary quality" of Boal's work. While such an adjustment is unusual, it can be made if "the representation is unusually good or bad, *taking into account the level of skill normally expected* of an attorney commanding the hourly rate used to compute the 'lodestar.' " *Copeland,* 641 F.2d at 893 (emphasis in original). "Moreover, ... where exceptional results are obtained, ... an increase in fee is justifiable." *Id.* at 894. We believe that the present case qualifies for upward adjustment under these criteria.

Plaintiff Maceira was dismissed from his position as union steward on December 11, 1979. He and other dissidents filed suit in May 1980, based upon "free expression" and "due process" rights guaranteed by the Landrum-Griffin Act. The district court denied plaintiffs a preliminary injunction. This court reversed the denial. And, by March 1982, plaintiffs had reached a settlement allowing Maceira reinstatement plus $13,000 in damages. The vindication of Maceira's "free speech" rights benefited the other dissident plaintiffs as well. Maceira's lawyers were completely successful. The issues were legally difficult. They were well presented and cogently argued on appeal. The affidavits show that the lawyers' use of time was efficient. Boal requested only one postponement during the entire course of the litigation, and that was to save his clients some expense. In addition, he worked in a distant place, with different customs and with those whose primary language was Spanish, not English. While some of these factors may have been reflected already in Boal's $100 per hour standard fee, we cannot say that the hourly rate encompassed all of them. In light of all these factors—even taking into account the $100 standard fee—we see no abuse of discretion in the upward adjustment.

We affirm the decision of the district court. We remand this case to that court for a determination of appropriate legal fees on this appeal. *See Souza v. Southworth,* 564 F.2d 609, 613–14 (1st Cir.1977). If the parties cannot settle this last mentioned matter, they will provide the district court with appropriate affidavits and records and the district court will make detailed findings to support its conclusion.

*Affirmed.*